UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
KERRY LANGENBACK,

               Plaintiff,                              **MEMORANDUM AND ORDER**

      -against-                                        24-CV-03574 (OEM) (CLP)

32BJ SEIU,

               Defendant.
-------------------------------------------------------------------x

ORELIA E. MERCHANT, United States District Judge:

On April 29, 2024, pro se plaintiff Kerry Langenback ("Plaintiff") commenced this action against defendant labor union 32BJ SEIU ("Defendant") in the Supreme Court of New York, Queens County, and on May 16, 2024, Defendant removed the case to this Court based on federal question jurisdiction. Notice of Removal, ECF 1. Plaintiff's amended complaint, filed on November 12, 2024, asserts breach of contract, discrimination, and "physical, emotional, financial, and mental distress" claims. Amended Complaint ("Am. Compl."), ECF 20.[1]

Before the Court is Defendant's fully-briefed motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state claims on which relief can be granted.[2] For the following reasons, Defendant's motion is granted.

---

[1] Plaintiff's filings in this case are handwritten on a legal pad and do not have page or paragraph numbers. *See* ECF 27, 33, 34. Therefore, the pinpoint citations to Plaintiff's filings in this Memorandum and Order refer to the page numbers assigned by the Case Management/Electronic Case Files ("CM/ECF") system. The CM/ECF numbers are located in the top right corner of each page.

[2] Defendant's Notice of Motion to Dismiss, ECF 21; Defendant's Memorandum of Law in Support ("Def.'s Mem."), ECF 21-1; Declaration of attorney Andrew L. Strom ("Strom Decl."), ECF 21-2; copy of a March 30, 2022 suspension notice issued by NYC School Support Services, Inc., to Plaintiff, as Exhibit A to Strom Declaration ("Strom Decl. Ex. A"), ECF 21-3; copy of the collective bargaining agreement between Local 32BJ and NYC School Support Services Inc., as Exhibit B to Strom Declaration ("Strom Decl. Ex. B"), ECF 21-4; a copy of legal authority *Coleman v. City of New York*, 1999 WL 1215570 (E.D.N.Y. 1999), as Exhibit C to Strom Declaration ("Strom Decl. Ex. C"), ECF 21-5); Notice to Plaintiff, ECF 21-6; Plaintiff's Response in Opposition ("Pl.'s Opp."), ECF 27; Defendant's Reply ("Def.'s Reply"), ECF 29.

1

## BACKGROUND [3]

Plaintiff was employed by New York City School Support Services, Inc. ("NYCSSS")[4] and was a member of labor union 32BJ SEIU. NYCSSS had a collective bargaining agreement ("CBA") with 32BJ SEIU. *See* Strom Decl. Ex. B.

Plaintiff alleges that on March 31, 2022, NYCSSS suspended him without pay and that the "cause was over a look." Am. Compl. at 7; Pl.'s Opp. at 3. Plaintiff alleges that Defendant "put [him] guilty before innocence" and that "from the first day" of his suspension, his union representative told him he was "guilty . . . without speaking with . . . [him] or [conducting] any investigation". *Id.* Plaintiff alleges that Defendant "took [six] weeks to start [its] investigation" and that on May 6, 2022, Plaintiff's union representative told him that Defendant 32BJ was "going

---

[3] Plaintiff's allegations in the amended complaint as well as the additional allegations raised by Plaintiff in his opposition to the motion to dismiss are accepted as true only for the limited purpose of deciding this motion to dismiss. While a plaintiff generally may not raise new allegations in his opposition to a motion to dismiss, in light of Plaintiff's pro se status, the Court will consider both the allegations in the amended complaint and opposition in deciding this motion. *See, e.g.*, *Mckinnies v. City of New* York, 23-CV-2567 (HG) (JRC) 2024 WL 4333703, at *1 n.2 (E.D.N.Y. Sept. 27, 2024) ("Although the general rule is that a plaintiff may not raise new allegations in her opposition to dismiss, because Plaintiff is representing herself, the Court will consider both the allegations in the Second Amended Complaint and in Plaintiff's Opposition . . . in deciding the motion); *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion.") (emphasis omitted).

Further, the caption of the amended complaint only lists 32BJ as a defendant. However, throughout the amended complaint, Plaintiff refers to "Defendant's [sic]" in plural, and in the opposition papers, Plaintiff refers to "Defendant 32BJ" and "Defendant [NYCSSS]." *See generally* Am. Compl.; Pl.'s Opp.

[4] In the Amended Complaint, Plaintiff does not state where he was suspended from and does not mention any employer by name. However, in the fully-briefed motion to dismiss, the parties do not dispute that Plaintiff was employed by NYCSSS during the relevant time alleged in the complaint. *See generally* Def.'s Mem.; Pl.'s Opp.; Def.'s Reply. Accordingly, the Court includes that information here. NYCSSS is "a New York not-for-profit corporation which provides mechanical and maintenance services to public school buildings in New York under contract with defendant the New York City Department of Education ('DOE')." *Gadsen v. New York City Sch. Support Servs.*, 18-CV-4417 (BMC), 2018 WL 5253113, at *1 (E.D.N.Y. Oct. 22, 2018).

2

to investigate" the allegations made against Plaintiff about his conduct. *Id.* Plaintiff alleges that he "wasn't even offered to sit in [the] rubber room while being investigated." *Id.*

Plaintiff further alleges that in September 2022, Defendant "took" his health and life insurance away. *Id.* He alleges that his health insurance covered both him and his 24-year-old son who was receiving mental health treatment that would have been covered for two more years. *Id.* Plaintiff alleges that his son "lost his doctor and medicine." *Id.*

Further, Plaintiff states that on April 20, 2023, he was "exonerated" of any wrongdoing. *Id.* Plaintiff alleges that Defendant then "gave [him] excuses on when [he could] go back to work" and receive his backpay and health insurance. *Id.* However, Plaintiff's union representative informed Plaintiff that he would be investigated "for one more week." *Id.* A week later, in May 2023, Plaintiff reached out to his union representative, but his representative did not respond until June when he told Plaintiff that Plaintiff was "supposed to receive an application" because "they didn't have [Plaintiff's] information." *Id.* at 7-8. Plaintiff alleges that this was a "lie" because Plaintiff "made sure [that] they had" his information before he left his job. *Id.* In any event, Plaintiff had not yet received an application so he "reached out to Defendant[,]" but again received "no response back." *Id.*

Eventually, on August 8, 2023, Plaintiff received a job application and reached out to his union representative with questions because it was a "new employment application." *Id.* Plaintiff alleges that, although he continued to text and call, he did not hear back from Defendant for the remainder of 2023. *Id.*

Plaintiff asserts that Defendant "stripped [him] from everything that should not have been" and that it "put [him] guilty before [he] was exonerated." *Id.* He alleges that "as of March 2025 it will be 3 years" since he was "wrongfully terminated" and "punished," that Defendant's conduct

3

over the past three years "is a passive form of harassment," and that he suffered and continues to suffer from Defendant's actions that caused him "physical, emotional, financial, [and] mental distress." *Id.*

## PROCEDURAL HISTORY

Plaintiff initially commenced this action in New York state court asserting breach of contract and defamation claims, and Defendant removed it under federal question jurisdiction to this Court. *See* Notice of Removal. After the Court set a briefing schedule for Defendant's motion to dismiss Plaintiff's original complaint, Plaintiff filed a letter indicating that he amends his complaint to add claims of physical, mental, and emotional distress. Undated Letter from Plaintiff docketed on October 21, 2024, ECF 19. In light of Plaintiff's request to amend, the Court terminated the briefing schedule it set on Defendant's motion to dismiss and directed Plaintiff to file his amended complaint by November 15, 2024. Order dated October 22, 2024. On November 12, 2024, Plaintiff filed the Amended Complaint. Am. Compl. Defendant's moving papers were filed on November 26, 2024, Plaintiff filed opposition papers on January 10, 2025, and on February 3, 2025, Defendant's filed a reply. The parties submitted supplemental filings.[5]

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[5] Attorney Declaration of Lyle Rowen in support of Defendant's motion to dismiss the Amended Complaint ("Rowen Decl."), ECF 30; a copy of email correspondence addressed to Plaintiff, as Exhibit A to Rowen Declaration ("Rowen Decl. Ex. A"), ECF 30-1; a copy of legal authority *Worthham v. Total Transportation Corp.*, 21-CV-85 (LDH) (MMH), 2024 WL 3387264 (E.D.N.Y. May 31, 2024), *report and recommendation adopted in part, rejected in part*, 21-CV-85 (LDH) (LKE), 2024 WL 4449411 (E.D.N.Y. Oct. 2, 2024), as Exhibit B to Rowen Declaration ("Rowen Decl. Ex. B"), ECF 30-2; a copy of legal authority *Harris v. Transp. Workers Union L-100*, 07-CV-1031 (RJD), 2007 WL 9723338 (E.D.N.Y. Oct. 17, 2007), as Exhibit C to Rowen Declaration ("Rowen Decl. Ex. C"), ECF 30-3; Letter from Defendant dated 2/3/2025, ECF 32; Letter from Plaintiff dated 2/10/2025 ("Pl.'s Letter"), ECF 33; Letter from Plaintiff dated 6/3/2025, ECF 34.

570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). "In addressing the sufficiency of a complaint [under Rule 12(b)(6)], [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) (citing *Twombly*, 550 U.S. at 555, 557), superseded by statute as stated in *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 483 (2023). When considering a Rule 12(b)(6) motion, the court must "test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits." *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 155 (2d Cir. 2006). As such, courts typically "do not consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202 (2d Cir. 2013) (citing *Glob. Network Commc'ns, Inc.*, 458 F.3d at 154-55).

Under Rule 8, a plaintiff need only provide a short, plain statement of their claim, so the defendant has adequate notice of the claim against them. *See* FED. R. CIV. P. 8. To satisfy this standard, the complaint must, at a minimum, "disclose sufficient information to permit the defendant 'to have a fair understanding of what the plaintiff is complaining about and to know

5

whether there is a legal basis for recovery.'" *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (citation omitted).

Generally, a court must treat the submissions of pro se plaintiffs "to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted), and must "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, courts "remain obligated to construe a pro se complaint liberally"). However, courts "cannot invent factual allegations that [the pro se plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## DISCUSSION

Plaintiff, a 32BJ SEIU union member, alleges that Defendant had a contract with him, which included a "fiduciary commitment" to him as a union member, that Defendant breached said contract, that Defendant did not adequately represent Plaintiff during a disciplinary and investigative process, and that Defendant's actions caused Plaintiff to suffer "physical, emotional, financial, and mental distress." Am. Compl. at 7-8, *see also* Pl.'s Opp'n. Liberally construing Plaintiff's pleadings "to raise the strongest arguments that they suggest," *see McPherson*, 174 F.3d at 280, the Court construes the facts Plaintiff alleges as asserting claims for breach of the duty of fair representation, discrimination, intentional infliction of emotional distress, and a hybrid Section 301 claim under the Labor Management Relations Act ("LMRA"). *See generally Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 46 (2d Cir. 2014) ("An employee's claim against a union for breaching its duty of fair representation (a 'DFR' claim) is a cause of action 'implied under the scheme' of the National Labor Relations Act."); *Chaney v.*

6

*Greyhound Lines, Inc.*, 09-CV-7593 HB, 2010 WL 3260163, at *1 (S.D.N.Y. Aug. 10, 2010) ("Breach of contract claims that arise out of a collective bargaining agreement are governed by § 301 of the [LMRA].") (citing 29 U.S.C. § 185(a)). Defendant likewise construes Plaintiff's amended complaint as asserting claims for breach of the duty of fair representation and for intentional and negligent infliction of emotional distress, and Defendant moves to dismiss each claim. Def.'s Mem. at 1, 4-7.

A.  **Plaintiff's Breach of Duty of Fair Representation Claim is Time-Barred**

Defendant seeks dismissal of Plaintiff's claim for breach of the duty of fair representation ("DFR"), arguing that it is untimely because it was not brought within six months of the date upon which Plaintiff knew or should have known that the duty had been breached. Defendant further argues that, even if the claim were timely, Plaintiff has failed to state claim for violation of the duty of fair representation. Def.'s Mem. at 1, 2-4, 7.

Plaintiff's DFR claim is analyzed under the National Labor Relations Act ("NLRA"). 29 U.S.C. §§ 151-69. *See Kalyanaram*, 742 F.3d at 46 (citing 29 U.S.C. §§ 151-169); *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015) ("The duty of fair representation is a 'statutory obligation' under the NLRA, requiring a union 'to serve the interests of all members without hostility or discrimination . . ., to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.") (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)).

The NLRA provides a six-month statute of limitations period for such a claim to be filed in court. *Kalyanaram*, 742 F.3d at 46; *Heller v. Consol. Rail Corp.*, 331 F. App'x 766, 768 (2d Cir. 2009) (holding that a claim of breach of the duty of fair representation against union must be filed within six months of the time when union members "know or reasonably should know that a breach of that duty has occurred."); *accord DelCostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151,

7

169 (1983). A DFR claim accrues when a plaintiff first knows, or should know, of the union's failure to adequately pursue his claim. *Cooper v. Wyeth Ayerst Lederle*, 106 F. Supp. 2d 479, 501 (S.D.N.Y. 200); *accord Santos v. District Council*, 619 F.2d 963, 969 (2d Cir. 1980) (holding that "cause of action accrue[s] no later than the time when plaintiffs knew or reasonably should have known that such a breach [of the duty of fair representation] had occurred, even if some possibility of nonjudicial enforcement remained").

Here, Plaintiff alleges that Defendant failed to properly defend Plaintiff in connection with Plaintiff's 2022 suspension and failed to help Plaintiff regain his employment, backpay, and health insurance following his exoneration in April 2023. Am. Compl., at 7-8. Relying on either event as the date of accrual, Plaintiff's claim is untimely because Plaintiff had reason to know by the end of 2022 or by spring of 2023, that the union potentially breached its duty of fair representation to him. Yet, Plaintiff commenced the instant action in March 2024, more than two years after his suspension and more than six months after his exoneration, without advancing any arguments for equitable tolling of the limitations period to excuse his untimeliness. Accordingly, Plaintiff's claim is dismissed as time-barred. *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir. 1995) ("Once a plaintiff learns of his union's breach of its duty of fair representation, the union's subsequent failure to actually represent the plaintiffs cannot be treated as a continuing violation that preclude[s] the running of the limitations period.")

Even if Plaintiff's claim was not time-barred, the facts alleged in Plaintiff's pleadings, accepted as true, do not support an inference that Plaintiff is entitled to relief. To state a claim for breach of the duty of fair representation under the NLRA, "a plaintiff must plead that (1) the union's conduct was 'arbitrary, discriminatory, or in bad faith[,]' and (2) there was a 'causal connection' between the union's wrongful conduct and the member's injuries." *Bledsoe*, 2024

8

WL 989845, at *6 (quoting *Perkins v. 199 SEIU United Healthcare Workers E.*, 73 F. Supp. 3d 278, 283 (S.D.N.Y. 2014). Plaintiff's allegations—that his union representative did not vigorously defend him against the accusations levied against him, did not follow up with him for months on the status of the investigation, "lied" about why he was unable to reach out to Plaintiff about a new job application, and did not return Plaintiff's calls or texts for the rest of 2023, *see* Am. Compl. at 7-8—are insufficient to draw inference that Plaintiff's union representative acted in bad faith, exhibited discriminatory or arbitrary conduct, or had some discriminatory animus towards Plaintiff. *See Canady v. U of R/Strong Mem'l Med. Ctr.*, 21-2150, 2022 WL 17825332, at *2 (2d Cir. Dec. 21, 2022) (finding that "generalized allegations that the Union 'fail[ed] to do investigations' and 'never responded to [plaintiff's] concerns,' do not plausibly allege that the Union acted in a way that was 'arbitrary, discriminatory, or in bad faith,' as necessary to state a claim for breach of the duty of fair representation") (citation omitted). At most, Plaintiff's allegations suggest a dissatisfaction with the manner in which the union represented him during his suspension and the investigation that followed, which is not sufficient to state a DFR claim. *See Saidin v. N.Y.C. Dep't of Educ*, 498 F. Supp. 2d 683, 689 (S.D.N.Y. 2007) (citation omitted) (dismissing pro se plaintiff's claims against union for failure to allege breach of the duty of fair representation).

### B. Plaintiff Has Not Stated a Discrimination Claim

Plaintiff also alleges that the Union discriminated against him. Am. Compl.; *see* Pl.'s Opp'n. Discrimination claims against unions or labor organizations are "grounded in the union's duty of fair representation [ ] to its members." *Klaper v. Cypress Hills Cemetery*, 10-CV-1811, 2012 WL 959403, at *7 (E.D.N.Y. Mar. 21, 2012). Thus, to state a Title VII or ADA claim against a union, a plaintiff must allege facts showing that (1) the union breached its duty of fair

9

representation to the plaintiff, and that (2) the union's actions were "motivated by discriminatory animus." *Bledsoe*, 2024 WL 989845, at *2 (citing *McIntyre v. Longwood Cent. Sch. Dist.*, 380 F. App'x 44, 49 (2d Cir. 2010)). Because the Court has found that Plaintiff has failed to state a DFR claim against the union, Plaintiff's claims of discrimination must fail. *Bledsoe*, 2024 WL 989845, at *4; *see Mourning v. Espinosa*, 24-CV-01379 (SVN), 2025 WL 2201061, at *7 (D. Conn. Aug. 1, 2025) (dismissing Title VII or ADA claim against union because Plaintiff had not alleged a viable claim for a breach of duty of fair representation).

## C. Plaintiff's Physical, Emotional, and Financial Distress Claims Fail

Plaintiff also alleges that Defendant's actions caused him to suffer "physical, emotional, financial, and mental distress," Am. Compl. at 8, which the Court construes as a claim for intentional infliction of emotional distress.[6] Construing Plaintiff's allegations as a claim for emotional distress damages, Defendants argue that such claim is pre-empted and that Plaintiff fails to allege conduct by Defendants that can be reasonably inferred to be "truly outrageous." Def.'s Mem. at 1, 7 (citing *United Steelworkers of America v. Rawson*, 495 U.S. 362 (1990)). Plaintiff does not present any opposing arguments to Defendants' arguments regarding this claim.

State law claims, like claims for emotional distress, that depend on interpretation of terms in a collective bargaining agreement, are pre-empted and those that are independent of the labor agreement are not. *See Rawson*, 495 U.S. at 371 (state wrongful death claim based on union's

---

[6] To plead an intentional infliction of emotional distress claim under New York law, a plaintiff must allege (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (construing New York law). To qualify as extreme and outrageous, "[t]he conduct alleged must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Coggins v. County of Nassau*, 254 F. Supp. 3d 500, 523 (E.D.N.Y. 2017) (quoting *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985)).

negligent inspection of workplace is pre-empted, because duty to inspect was assumed through collective bargaining agreement); *International Brotherhood of Electrical Workers v. Hechler*, 481 U.S. 851, 862 (1987) (state tort claim alleging employer's failure to train is pre-empted, because not sufficiently independent of collective bargaining agreement); *but see Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 411-12 (1988) (state retaliatory discharge claim is not pre-empted, because based on statutory rights separate from the collective bargaining agreement).

Plaintiff's emotional distress claim falls squarely within the federal duty of fair representation because the gravamen of Plaintiff's allegation is premised on whether Defendant adequately represented him, which "strikes to the very heart of the duty of fair representation." *Cruz v. United Automobile Workers Union Local 2300*, 2019 WL 3239843, at *21 (N.D.N.Y. July 18, 2019) (finding negligent and intentional infliction of emotional distress claims are pre-empted because they fall within union's duty to "represent plaintiff in good faith" during grievance process). "Given Congress' intent that such duties should be governed by federal law," allowing Plaintiff to "sue for violations of these duties under state law in the form of claims for infliction of emotional distress" is not in accord with Congress' intent. *Id.* Accordingly, Plaintiff's emotional distress claims are pre-empted by the duty of fair representation.

Even if Plaintiff's emotional distress claims were otherwise cognizable, they are nonetheless barred as against the union. *See Martin v. Curran*, 303 N.Y. 276, 101 N.E.2d 683 (1951) (holding that to establish a viable state law tort claim against a labor organization in New York State, a plaintiff must plead that each and every member of the union is individually responsible for the action of which he complains, either by direct participation, specific authorization, or knowing ratification); *Goodman v. Port Auth. of N.Y & N.J.*, 10-CV-8352 (RWS), 2011 WL 3423800, at *10 (S.D.N.Y. Aug. 4, 2011). This pleading standard applies because, under

11

New York law, a voluntary unincorporated association, such as Local 32BJ, is neither a partnership nor a corporation. *Goodman*, 2011 WL 3423800, at *10. Unlike a corporation, a union is "not an artificial person, and has no existence independent of its members . . . . A part of the members of a voluntary organization cannot bind the other without their consent before the act which it is claimed binds them is done, or they, with full knowledge of these facts, ratify and adopt it." *Id.* (quoting *Martin*, 303 N.Y. at 280). While federal and state courts have criticized *Martin,* it has not been overturned and remains the law in New York state. *See, e.g.*, *Cablevision Sys. Corp. v. Commc'ns Workers of Am. Dist. 1*, 16 N.Y.S.3d 828, 829 (N.Y. App. Div. 2d Dep't 2015) (finding *Martin* barred claims against the union); *Palladino v. CNY Centro, Inc.*, 23 N.Y.3d 140, 148-51 (N.Y. 2014) (noting that *Martin* has been questioned, but declining to overrule it).

Here, Plaintiff has not pleaded facts indicating that all members of 32BJ participated in, authorized, or ratified 32BJ's and/or Plaintiff's union representative's conduct. Therefore, Plaintiff's claim fails. *See Moleon v. Alston*, 21-CV-1398 (PAE), 2021 WL 5772439, at *11 (S.D.N.Y. Dec. 3, 2021); *Sales v. N.Y. City Transit Auth.*, 08-CV-3420 (LAP), 2010 WL 87758, at *6 (S.D.N.Y, Jan. 7, 2010) (dismissing intentional infliction of emotional distress claim against union for failure to meet *Martin*'s pleading requirements)

### D.     The Court Declines to Grant Plaintiff Leave to Amend

Plaintiff alleges that NYCSSS breached the CBA, but Plaintiff does not name NYCSS as a defendant. "Breach of contract claims that arise out of a collective bargaining agreement are governed by § 301 of the [LMRA]," which is where "the employee has a cause of action against both the employer and the union. *Chaney v. Greyhound Lines, Inc.*, 09-CV-7593 HB, 2010 WL 3260163, at *1 (S.D.N.Y. Aug. 10, 2010). "The claim against the employer is that it violated the collective bargaining agreement. The claim against the union is that the union did not properly

12

represent the employee . . . ." *Id.* (citing 29 U.S.C. § 185(a)); *Black v. Anheuser-Busch In Bev*, 220 F. Supp. 3d 443, 449 (S.D.N.Y. 2016) (stating that in "a so-called 'hybrid § 301/fair representation claim,' an employee may sue both the employer and the union, but "must prove both (1) that the employer breached the collective bargaining agreement and (2) that the union breached its [DFR] vis-a-vis the union members").

Plaintiff does not seek leave to amend. However, because he is proceeding pro se, the Court considers whether further amendment is warranted. While the Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)," the Court declines to grant Plaintiff leave to amend his complaint for a third time. *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (affirming denial of leave to amend). "A court should freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (affirming denial of leave to amend). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)." *In re Tribune Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 175 (2d Cir. 2021) (affirming denial of leave to amend).

Here, even if Plaintiff were to properly assert a cause of action against NYCSSS, that claim would also be dismissed as time-barred because that claim is predicated on the same conduct as his DFR claim. *Connor v. Elmhurst Dairy, Inc.*, 13-CV-4769 ENV LB, 2015 WL 5159185, at *5 (E.D.N.Y. Aug. 17, 2015) (the statute of limitations for a hybrid claim, under the LMRA, is six months). Thus, any attempt to re-plead to add NYCSSS as a defendant would be futile.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted, and Plaintiff's amended complaint is dismissed. The Clerk of Court is respectfully directed to enter judgment and close the case.

**SO ORDERED.**

/s/
ORELIA E. MERCHANT
United States District Judge

August 6, 2025
Brooklyn, New York